PAULINE M. KNOTT v. WASHINGTON HOUSING AUTHORITY OF THE CITY OF WASHINGTON, NC

No. 832DC1008

(Filed 21 August 1984)

**1. Easements § 5.3— easement implied from prior use—sufficiency of evidence**

Evidence was sufficient to support the trial court's conclusion that plaintiff had an easement implied from prior use in an alley which bordered her property where the evidence tended to show that a conveyance from one of plaintiff's predecessors to another of her predecessors amounted to a separation of title with regard to the land on either side of the alley in question; this alley constituted the only means of ingress to and egress from the property prior to the separation of title; an implied easement was created at the time of separation of title; the alley continued to serve plaintiff's predecessors as the sole means of reaching the property; and plaintiff herself and her tenants used the alley for access to the property for a period of seven years.

**2. Damages § 5; Evidence § 45— closing of alley—damages—opinion evidence of value**

Where plaintiff claimed that she had obtained an easement in an alley and alleged that defendant had closed the alley in violation of her rights, the trial court did not err in finding that plaintiff was damaged in the amount of $4,876.80, though the only evidence regarding value was the testimony of plaintiff's son that the value of his mother's property was $16,256.00 prior to the closing and $11,379.20 immediately after the closing, since the correct measure of damages was the difference in the fair market value of the land immediately before and after the taking; the value of the use of property may be

proved by opinion evidence of witnesses acquainted with the property and the facts bearing upon its use; plaintiff's son managed his mother's property and visited the land about four times per year; and he was familiar with the sales prices of adjacent lots.

**3. Judgments § 55— date of damage unknown—no pre-judgment interest**

Where plaintiff could not actually pinpoint the date on which her property was damaged for the purpose of measuring interest and she submitted the date on which her action was filed as the date from which interest would be tolled, the trial court did not err in concluding as a matter of law that it could not properly sign and enter a judgment allowing pre-judgment interest.

APPEAL by defendant from *Hardison, Judge.* Judgment entered 21 March 1983 in District Court, BEAUFORT County. Heard in the Court of Appeals 7 June 1984.

Between 1954 and 1970 plaintiff acquired three contiguous tracts of land on West Fifth Street in the City of Washington, North Carolina. West Fifth Street in the vicinity of plaintiff's property is also U.S. Highway 264, a four-lane undivided paved road. All of the tracts were conveyed to plaintiff by Emma Foreman and Addie Foreman Harris and her husband Edgar Harris from a larger tract.

The first lot acquired by plaintiff in 1954 began on the northern edge of West Fifth Street and was roughly 47.5 feet wide and 47 feet deep. In order to build a dwelling on the lot, plaintiff found it necessary to purchase an additional six foot strip on the east and north sides. In 1970 plaintiff acquired the third tract in order to provide access and space for parking. This lot, which was 53.5 feet wide and 41 feet deep, connected the land previously purchased with a lane or cartway known as Cherry's Alley. Cherry's Alley ran in a generally east-west direction parallel with West Fifth Street to an intersection with Washington Street. It was at one time part of a larger parcel of land owned by Adam Cherry.

In 1978 defendant began a slum clearance and redevelopment project in an area north of Cherry's Alley. The project involved the acquisition by eminent domain of certain parcels of land north of Cherry's Alley. The area was later subdivided by defendant and sold to a third person who graded and landscaped the lots for residential construction.

Robert Smaw became plaintiff's tenant in the house on West Fifth Street in 1970. In order to reach the house, Smaw would drive his car to his backyard by way of Cherry's Alley, which he would enter from its intersection with Washington Street. There was no room at the front of the house on West Fifth Street to park a car, and there was no room on the sides of the house for a car to be driven around it. In late 1977 or early 1978 the developer of the lots north of plaintiff's property plowed up the alley and instructed Smaw not to use it anymore.

On 25 September 1980 plaintiff filed a declaratory judgment action in which she alleged that the only means of ingress and egress to and from her property was along Cherry's Alley east-wardly to Washington Street. She further claimed that she had obtained an easement in the alley and alleged that defendant completely closed and obliterated the alley in violation of her rights.

After hearing all the evidence, the trial court found that plaintiff had an easement in Cherry's Alley and that defendant's act of destroying the alley had damaged plaintiff in the amount of $4,876.80. From these proceedings defendant appeals.

*Gaskins, McMullan and Gaskins, by Herman E. Gaskins, Jr., for defendant appellant.*

*Wilkinson and Vosburgh, by James R. Vosburgh, for plaintiff appellee.*

ARNOLD, Judge.

[1] Defendant contends that the trial court erred in finding that plaintiff had an easement along Cherry's Alley to Washington Street. We disagree and find that the evidence does show that plaintiff had an implied easement in the alley.

Although easements must generally be created in writing, courts will find the existence of an easement by implication under certain circumstances. J. Webster, *Real Estate Law in North Carolina*, § 280 at 346 (1971). Easements are implied in two basic situations. In the first, an "easement by necessity" may be found, typically when land becomes landlocked after a sale or transfer. In the second situation, more applicable to the case at bar, an "easement from prior use" may be implied "to protect the prob-

able expectations of the grantor and grantee that an existing use of part of the land would continue after the transfer." P. Glenn, *Implied Easements in the North Carolina Courts: An Essay on the Meaning of "Necessary,"* 58 N.C.L. Rev. 223, 224 (1980). We find that there exists competent evidence in the record to support a finding that plaintiff obtained an easement implied from prior use.

The author in the above mentioned article describes what he sees as a typical example of an easement implied from prior use, stating that it "begins with a landowner who builds and uses a driveway from the public road. Later he sells a portion of the land served by the driveway but retains title to the driveway itself. The purchaser, who knew of the driveway at the time of the transfer, may have reasonably assumed that the driveway would continue to serve his land, regardless of whether his land had some other access to the public road." *Id.* This "typical" example closely resembles the facts of the case at bar.

An easement implied from prior use is generally established by proof: (1) that there was common ownership of the dominant and servient parcels and a transfer which separates that ownership; (2) that, before the transfer, the owner used part of the tract for the benefit of the other part, and that this use was apparent, continuous and permanent; and (3) that the claimed easement is "necessary" to the use and enjoyment of the claimant's land. *See Glenn, supra* at 225, and *Dorman v. Ranch, Inc.,* 6 N.C. App. 497, 170 S.E. 2d 509 (1969).

Moreover, the element of necessity does not require a showing of absolute necessity. "It is sufficient to show such physical conditions and such use as would reasonably lead one to believe that grantor intended grantee should have the right to continue to use the road in the same manner and to the same degree which his grantor had used it, because such use was reasonably necessary to the 'fair' . . . , 'full,' . . . 'convenient and comfortable,' . . . enjoyment of his property." *Smith v. Moore,* 254 N.C. 186, 190, 118 S.E. 2d 436, 438-39 (1961) (citations omitted).

Applying these principles to the facts before us, we find that the evidence is sufficient to establish an easement implied from prior use in Cherry's Alley. The first link in plaintiff's chain of title is a deed to Adam Cherry by Margaret Taylor dated 30 Oc-

tober 1876. The property conveyed was a single tract constituting 2 5/6 acres and lying both north and south of Cherry's Alley. The next conveyance in the chain is a deed from Adam Cherry to Champ Shields dated 25 October 1895. The description shows that the lot conveyed became landlocked as a result of the conveyance, except for the cartway adjoining it to the north. The lot is described as adjoining the lands of Rebecca Bryant on the west; a lane or cartway on the north; and the lands of Adam Cherry, the grantor, on the east and south. This lane or cartway, now known as Cherry's Alley, clearly provided Champ Shields with the only means of ingress to and egress from the lot conveyed. Moreover, since the conveyance from Adam Cherry to Champ Shields amounted to a separation of title with regard to the land to the north and south of Cherry's Alley, and since this alley appears to have constituted the only means of ingress to and egress from the property prior to the separation of title, we find that an implied easement was created at the time Shields came into ownership of the property. Since the alley has continued to serve plaintiff's predecessors in title as the sole means of reaching the property, we conclude that plaintiff herself must be allowed to benefit from this use of the alley and hold that she had an easement implied from prior use.

Defendant also contends that the trial court erred in admitting into evidence a map prepared in 1976 of a tract of land south of Cherry's Alley which was introduced over defendant's objection. We find that this evidence was properly admitted.

The record indicates that defendant made a general objection to the offer of the exhibit in that the grounds for objection were not specified. A general objection, if overruled, will not be preserved on appeal unless there was no purpose for which the evidence could have been admitted. *State v. Ward*, 301 N.C. 469, 272 S.E. 2d 84 (1980). We find that the map was clearly admissible for the purpose of illustrating the testimony of the witness, Robert Smaw.

[2] Defendant also contends that the trial court erred in finding that plaintiff was damaged in the amount of $4,876.80. It is alleged that this finding was based on incompetent evidence, since the only evidence regarding value was the testimony of plaintiff's son, who stated that, in his opinion, the value of his mother's

property was $16,256.00 prior to the time Cherry's Alley was closed and $11,379.20 immediately after the alley was closed. We find that the trial judge did not abuse his discretion in denying defendant's motion to strike the testimony.

When an easement is taken by a third person the correct measure of damages is the difference in the fair market value of the land immediately after the taking. *See Hill v. Town of Hillsborough*, 48 N.C. App. 553, 269 S.E. 2d 303 (1980). It is established that the value of the use of property may be proved by the opinion evidence of witnesses acquainted with the property and the facts bearing upon its use. *Perkins v. Langdon*, 237 N.C. 159, 74 S.E. 2d 634 (1953). Moreover, it is not necessary that the witness be an expert. *Huff v. Thornton*, 287 N.C. 1, 213 S.E. 2d 198 (1975). It is sufficient that the witness have such knowledge and experience and such familiarity with the property to be valued as will enable him to make an intelligent estimate of its value. *Highway Comm. v. Fry*, 6 N.C. App. 370, 170 S.E. 2d 91 (1969).

In the case at bar, plaintiff's son managed his mother's property and visited the land about four times per year. Moreover, he was familiar with the sales prices of the adjacent lots. We find that the court did not err in finding him competent to testify about the value of the property at issue.

[3] Lastly, plaintiff contends in her cross assignment of error that the court committed error in concluding as a matter of law that it could not properly sign and enter a judgment in this case allowing pre-judgment interest. The record reflects that the trial court originally provided in the judgment that plaintiff was entitled to recover interest on the damages from 25 September 1980, which was the date on which this action was initiated. Subsequently, defendant moved the court to amend the judgment to provide for interest only from the date of judgment. After considering the motion, the trial court concluded that it could not properly sign a judgment in this case allowing pre-judgment interest. We affirm the decision of the court.

It is established that pre-judgment interest may be awarded on the value of property from the date the property was taken. *Sanders v. Wilkerson*, 20 N.C. App. 331, 201 S.E. 2d 571 (1974). In the case at bar, it appears that since plaintiff couldn't actually

pinpoint the date on which her property was damaged for the purpose of measuring interest, she submitted the date on which this action was filed as the date from which interest would be tolled. It was the duty of plaintiff to show the actual date of taking. As she was unable to make such a showing, the trial court was correct in concluding as a matter of law that it could not sign and enter a judgment allowing pre-judgment interest.

The decision of the trial court is

Affirmed.

Judges WHICHARD and EAGLES concur.